UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
J & J SPORTS PRODUCTIONS, INC.,

              Plaintiff,

      - against -

LAZARO A. GOMEZ, individually and
d/b/a Tony's Barbershop; ANA M.
GONZALEZ, individually and d/b/a Tony's
Barbershop, and ANA'S UNISEX
BEAUTY SUPPLY, INC., an unknown
business entity d/b/a Tony's
Barbershop,

              Defendants.
--------------------------------------------------------X

**REPORT AND
RECOMMENDATION**

18 CV 5119 (KAM)(CLP)

On September 11, 2018, J & J Sports Productions, Inc. ("plaintiff" or "J & J") commenced this suit against Lazaro Gomez, individually and d/b/a Tony's Barbershop, Ana M. Gonzalez, individually and d/b/a Tony's Barbershop, and Ana's Unisex Beauty Supply, Inc., an unknown business entity d/b/a Tony's Barbershop (collectively, "defendants"), alleging violations of 47 U.S.C. §§ 605 and 553.

Upon the failure of defendants to answer or respond to the Complaint, the Clerk of Court entered default against the defendants on December 10, 2018. The plaintiff moved for default judgment on December 6, 2018, and the action was subsequently referred to the undersigned by the Honorable Kiyo A. Matsumoto to conduct an inquest and prepare a Report and Recommendation.

1

For the foregoing reasons, this Court respectfully recommends that, pursuant to 47 U.S.C. §§ 605(e)(3)(C)(i)(II), 605(e)(3)(C)(ii), and 605(e)(3)(B)(iii), plaintiff be awarded damages of $2,000.00.[1]

## FACTUAL BACKGROUND

In the Complaint, plaintiff alleges that, pursuant to a closed-circuit television licensing agreement with Mayweather Promotions, plaintiff obtained the exclusive rights to commercially distribute the September 12, 2015 WBA/WBC World Welterweight Championship Fight between Floyd Mayweather, Jr and Andre Berto, including all undercard or preliminary bouts (the "Event"), at closed-circuit locations such as theaters, arenas, bars, clubs, lounges, and restaurants throughout New York.  (Compl.[2] ¶ 15; Pl.'s Mem. at 2; Gagliardi Aff.[3] ¶ 3).  These closed-circuit locations could only obtain access to the broadcast by entering into a contractual relationship with plaintiff.  (Compl. ¶ 16; Pl.'s Mem. at 2; Gagliardi Aff. ¶ 8).  In order to gain access to the encrypted interstate satellite transmission of the Event, each participating establishment was provided with the electronic decoding equipment and the satellite coordinates necessary to receive the signal.  (Pl.'s Mem. at 2; Gagliardi Aff. ¶ 11).

---

[1] The Court notes that although the statute authorizes an award of attorneys' fees, see 47 U.S.C. § 605(e)(3)(B)(iii), plaintiff requested 30 days from the date of judgment to file for fees.  (Plaintiff's Memorandum of Law in Support of Application for Default Judgment, filed February 22, 2019 ("Pl.'s Mem."), ECF No. 10 at 10).

[2] Citations to "Compl." refer to plaintiff's Complaint, filed September 11, 2018, ECF No. 1.

[3] Citations to "Gagliardi Aff." refer to the Affidavit of Joseph Gagliardi, President of J&J Sports Productions, Inc., dated January 16, 2019, ECF No. 10.

Plaintiff alleges that Tony's Barbershop is a commercial establishment organized under the laws of the State of New York with its principal place of business located at 4904 7th Avenue, Brooklyn, New York.  (Compl. ¶ 7; Pl.'s Mem. at 2).  According to the Complaint, there is another entity, Ana's Unisex Beauty Supply, Inc., that shares the same location as Tony's Barbershop.  (Comp. ¶ 7).  Defendants Lazaro A. Gomez and Ana M. Gonzalez are alleged to be the officers, directors, shareholders, and/or principals of Ana's Unisex Beauty Supply, Inc. with the ability to supervise the activities alleged in the Complaint.  (Id.)

On September 12, 2015, at approximately 8:45 p.m., Cosmo Lubrano, an investigator with Auditmasters, employed by plaintiff, entered Tony's Barbershop, where he observed the Event being broadcast to patrons of the establishment.  (Lubrano Aff.[4] at 1).  Inside he observed two television sets and approximately two patrons on the premises at the time of the broadcast.  (Id.)  He represents that upon his arrival at 8:45 p.m., he observed that the seventh round of the undercard match between Gonzalez, in black and white trunks, and Oquendo, in silver and blue trunks, was in progress.  (Id. at 2).

Plaintiff asserts that defendants did not obtain a sublicense from J & J and were not authorized to display the Event,  in violation of federal law.  (Compl. ¶¶ 10-12, 18-20; Gagliardi Aff. ¶¶ 3, 7).  Plaintiff further asserts that the Event could not be intercepted

---

[4] Citations to "Lubrano Aff." refer to the Affidavit of Cosmo Lubrano, Investigator for Plaintiff, dated September 29, 2015, and submitted as Exhibit 5 to Joseph P. Loughlin's Declaration of plaintiff's counsel in Support of Application for Default Judgment ("Loughlin Aff."), dated February 22, 2019, ECF No. 10.

3

"mistakenly, innocently, or accidentally," and has detailed several ways in which the Event could be illegally intercepted.  (Gagliardi Aff. ¶¶ 9-10(A-E)).

On September 11, 2018, plaintiff commenced this action seeking statutory damages pursuant to 47 U.S.C. §§ 553 and 605.  Plaintiff served copies of the summons and complaint upon the defendants by personal service on Mr. Gomez and Ms. Gonzalez.

Plaintiff requests an award of $24,000.00 for defendants' willful violation under 47 U.S.C. §§ 553(c)(3)(B) and 605(e)(3)(C)(ii).  Additionally, pursuant to 47 U.S.C. § 605(e)(3)(B)(iii), plaintiff is entitled to costs and attorneys' fees.  Plaintiff seeks attorneys' fees and relevant costs but requests that J & J "be granted 30 days from the date the judgment becomes final to submit its Motion."  (Pl.'s Mem. at 10).

DISCUSSION

A.    Default

Rule 55 of the Federal Rules of Civil Procedure sets forth a two-step process in which first a default, and then a default judgment, is entered.  See Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95 (2d Cir. 1993).  The court clerk automatically enters the default pursuant to Rule 55(a) of the Federal Rules of Civil Procedure by noting the party's default on the clerk's record of the case.  See id.; Fed. R. Civ. P. 55(a) (providing that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default.").

After a default has been entered against a party, if that party fails to appear or otherwise move to set aside the default pursuant to Rule 55(c), a default judgment may be

4

entered.  See Fed. R. Civ. P. 55(a).  If the amount of damages must be ascertained in order for a default judgment to be entered, the court may conduct a hearing.  See Fed. R. Civ. P. 55(b)(2); Enron Oil Corp. v. Diakuhara, 10 F.3d at 95.  Here, plaintiff submitted a request for entry of default dated December 6, 2018.  The Clerk of the Court entered a default on December 10, 2018, and on April 1, 2019, the district court referred this motion to the undersigned.

In determining whether a default judgment should be entered, courts have cautioned that a default judgment is an extreme remedy that should only be granted as a last resort.  See Meehan v. Snow, 652 F.2d 274, 277 (2d Cir. 1981).  While the Second Circuit has recognized the "push on a trial court to dispose of cases that, in disregard of the rules, are not processed expeditiously [and] . . . delay and clog its calendar," it has held that the district court must balance the interest in expediting cases with the court's responsibility to "[afford] litigants a reasonable chance to be heard."  Enron Oil Corp. v. Diakuhara, 10 F.3d at 96.  Thus, in light of the "oft-stated preference for resolving disputes on the merits," defaults are "generally disfavored," and doubts should be resolved in favor of the defaulting party.  Id. at 95-96.  Accordingly, the plaintiff is not entitled to a default judgment as a matter of right, simply because the defendants are in default.  Hirsch v. Innovation Int'l, Inc., No. 91 CV 4130, 1992 WL 316143, at *2 (S.D.N.Y. Oct. 19, 1992); see also Erwin DeMarino Trucking Co. v. Jackson, 838 F. Supp. 160, 162 (S.D.N.Y. 1993) (stating that courts are required to "supervise default judgments with extreme care to avoid miscarriages of justice," and ordering an inquest to determine damages).

5

The court possesses significant discretion and may consider a number of factors in deciding whether to grant a default judgment, including whether the grounds for default are clearly established and the amount of money potentially involved.  See Hirsch v. Innovation Int'l, Inc., 1992 WL 316143, at *1-2.  The greater the amount of money involved, the less justification there may be for entering the default judgment.  See id.  Additionally, a court may consider whether material issues of fact remain, see Pacific M. Int'l Corp. v. Raman Int'l Gems, Ltd., 888 F. Supp. 2d 385, 393 (S.D.N.Y. 2012), whether the facts alleged in the complaint state a valid cause of action, see Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981), whether plaintiff has been substantially prejudiced by the delay involved, see Arthur F. Williams, Inc. v. Helbig, 208 F.R.D. 41, 44-45 (E.D.N.Y. 2002), and how harsh the effect of a default judgment might be on the defendant.  Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, 10A Federal Practice & Procedure, §§ 2685, 2688 (3d ed. 1998).

When a default judgment is entered, the defendant is deemed to have admitted all of the well-pleaded factual allegations in the complaint pertaining to liability.  See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992), cert. denied, 506 U.S. 1080 (1993); see also Montcalm Publ'g Corp. v. Ryan, 807 F. Supp. 975, 977 (S.D.N.Y. 1992) (gathering cases).  For the purposes of an inquest, a court accepts as true all factual allegations in the complaint, except those claims relating to damages.  See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d at 158; Au Bon Pain Corp. v. Artect, Inc., 653 F.2d at 65.

Plaintiff alleges that the defendants violated 47 U.S.C. §§ 553(a)(1)[5] and 605(a) through the unauthorized reception of plaintiff's satellite communications. However, a court is not permitted to grant damages under both statutes for a single illegal transmission. See International Cablevision, Inc. v. Sykes, 997 F.2d 998, 1008-09 (2d Cir. 1993). Rather, the Second Circuit has stated that where a defendant is found to have violated both statutes, the court should award damages pursuant to Section 605. Id.; see also Garden City Boxing Club, Inc. v. Polanco, No. 05 CV 3411, 2006 WL 305458, at *5 (S.D.N.Y. Feb. 7, 2006), aff'd, 228 F. App'x 29, 30 (2d Cir. 2007). Since the Court finds that plaintiff has sufficiently stated a claim against defendants for a violation of Section 605, the Court has considered plaintiff's request for damages only under Section 605, and not under Section 553.

Here, it is clear that the allegations in the Complaint establish the elements of liability necessary to state a claim under Section 605. Section 605(a), which provides, inter alia, that "[n]o person not being authorized by the sender shall intercept any radio communication and divulge or publish the . . . contents . . . of such intercepted communication to any person," 47 U.S.C. § 605(a), has been held to apply to the interception of cable communications originating as a satellite or radio transmission. See International Cablevision, Inc. v. Sykes, 75 F.3d 123, 131-32 (2d Cir. 1996), cert. denied, 519 U.S. 929 (1996); see also Garden City Boxing Club, Inc. v. Polanco, 2006 WL 305458, at *4; Entertainment by J & J, Inc. v. Mama

---

[5] Section 553(a)(1) provides, in pertinent part, "No person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law." 47 U.S.C. § 553(a)(1).

Zee Rest. & Catering Servs., Inc., No. 01 CV 3945, 2002 WL 2022522, at *2 (E.D.N.Y. May 21, 2002); Time Warner Cable of New York City v. Taco Rapido Rest., 988 F. Supp. 107, 110 (E.D.N.Y. 1997).  Here, defendants' alleged conduct – the unauthorized interception, receipt, and broadcast of the Event from satellite communications – violates this statute.

It is beyond dispute that the corporate defendant, Ana's Unisex Beauty Supply, Inc., is in default because it has not responded to the Complaint.[6]  See Hirsch v. Innovation Int'l, Inc., 1992 WL 316143, at *2 (holding that "[the defendant's] default is crystal clear – it does not even oppose this motion").  Moreover, the corporate defendant has not obtained counsel, and failure to obtain counsel constitutes a failure to defend because corporations cannot proceed in federal court pro se.  See Shapiro, Bernstein & Co. v. Continental Record Co., 386 F.2d 426, 427 (2d Cir. 1967) (per curiam) (stating that "it is settled law that a corporation cannot appear other than by its attorney"); see also Jones v. Niagara Frontier Transp. Auth., 722 F.2d 20, 22 (2d Cir. 1983) (discussing the rationale for requiring corporations, as "artificial" entities, to appear through counsel).  Unlike those instances where courts have been hesitant to enter default judgment because there were potentially millions of dollars at stake, the amount of money involved in this case is not significant.  See Hirsch v. Innovation Int'l, Inc., 1992 WL 316143, at *2 (declining to enter default judgment, in part because plaintiff's damages request ran "well into the millions of dollars," and giving defendant an opportunity to contest the entry of default).

---

[6] The liability of the individual defendants is discussed infra at 9-12.

8

Here, the corporate defendant has not only failed to file an Answer or otherwise move with respect to the Complaint, it also failed to respond to plaintiff's motion for entry of default judgment. Thus, plaintiff's evidence on damages is unrefuted. Given the opportunities afforded defendants and their apparent lack of interest in participating in these proceedings, there is no compelling reason to delay further.

Accordingly, the Court respectfully recommends that plaintiff's motion for entry of a default judgment be granted.

B.     The Individual Defendants' Liability

To establish a contributory violation of 47 U.S.C. § 605(a), plaintiff is required to demonstrate that an individual defendant has authorized the violations set forth in the Complaint. Garden City Boxing Club, Inc. v. Morales, No. 05 CV 64, 2005 WL 2476264, at *10 (E.D.N.Y. Oct. 7, 2005) (citing cases); see also Softel, Inc. v. Dragon Med. & Sci. Commc'ns, Inc., 118 F.3d 955, 971 (2d Cir. 1997). "'To establish vicarious liability, . . . [plaintiff] must show that . . . [defendant] had a right and ability to supervise the infringing activities and had an obvious and direct financial interest in the exploitation of [the] copyrighted materials.'" Garden City Boxing Club, Inc. v. Morales, 2005 WL 2476264, at *10 (quoting Kingvision Pay-Per-View, Ltd. v. Olivares, No. 02 CV 6588, 2004 WL 744226, at *5 (S.D.N.Y. Apr. 5, 2004) (internal citation omitted)).

There are three defendants in this action: Lazaro A. Gomez, Ana M. Gonzalez, and Ana's Unisex Beauty Supply, Inc. Plaintiff alleges that the individual defendants, Lazaro A. Gomez and Ana M. Gonzalez, were "officers, directors, shareholders, and/or principals" of

9

the third defendant, Ana's Unisex Beauty Supply, Inc. (Compl. ¶ 7). Plaintiff further alleges that Ana's Unisex Beauty Supply, Inc. "operates the commercial establishment doing business as Tony's Barbershop." (Id.) Plaintiff claims that "the employees of Tony's Barbershop . . . unlawfully intercept[ed] and broadcast[ed] the Event." (Id. ¶ 10). Plaintiff states that the individual defendants "had the right and ability to supervise the activities of Ana's Unisex Beauty Supply, Inc." (Id. ¶ 8). Plaintiff also alleges that defendants Gomez and Gonzalez had "an obvious and direct financial interest in the activities of Tony's Barbershop . . . ." (Id. ¶ 11). Further, apart from information provided in the motion for default judgment and the affidavit from plaintiff's investigator, there is no sworn testimony or additional documentation to provide evidentiary support for the alleged control the individual defendants had over the actions of Tony's Barbershop on the night of September 12, 2015.

Since Gomez and Gonzalez have defaulted in this action, plaintiff's allegations remain unchallenged and must be accepted as true. See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d at 158.

The Supreme Court has advised, however, that "formulaic recitation of the elements of a cause of action" is insufficient to establish a prima facie case. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Courts in this district have found that allegations similar to the one in this case are "nothing more than a formulaic recitation of the elements of a cause of action . . . ." J & J Sports Prods., Inc. v. Orellana, No. 18 CV 2052, 2019 WL 1177719, at *4 (E.D.N.Y. Mar. 13, 2019) (declining to hold individual defendant liable where the plaintiff cited nothing more than defendant's "designation as the owner or principal of [Establishment] on its New York State Liquor Authority-issued license"); see also J & J Sports Prods., Inc. v. LX Food

10

Grocery Inc., No. 15 CV 6505, 2016 WL 6905946 (E.D.N.Y. Nov. 23, 2016).  Further, plaintiff is seeking to hold individual defendants responsible for the broadcast by pointing to their positions as "officers, directors, shareholders, and/or principals" of Ana's Unisex Beauty Supply, Inc.  (Compl. ¶ 7).  However, officers of a corporation are not generally liable for the wrongful acts of the corporation "unless they participate in or have knowledge of such acts." Garden City Boxing Club, Inc. v. Paquita's Café, Inc., 06 CV 6953, 2007 WL 2783190, at *2 (S.D.N.Y. Sept. 26, 2007).  The Court cannot simply infer from the individual defendants' titles that they were "positioned to supervise the infringing broadcast, or directly participated in, authorized, or ha[d] knowledge of the violation."  J & J Sports Prods., Inc. v. Monte Limar Sports Bar Inc., No. 15 CV 3771, 2017 WL 933079 at *3 (E.D.N.Y. Mar. 8, 2017); see also J & J Sports Prods., Inc. v. Daley, No. 06 CV 238, 2007 WL 7135707 (E.D.N.Y. Feb. 15, 2007) (holding that "logic does [not] support the inference that Daley as an officer, director, shareholder and/or principal of Kev's had the kind of control J & J asserts."  (internal quotations omitted)).

The case at hand provides an additional wrinkle due to plaintiff's failure to clarify which business, Tony's Barbershop or defendant Ana's Unisex Beauty Supply, Inc., had control over the broadcast of the Event.  There was no advertising outside, no indication of where patrons were seated within the Establishment, and no additional facts that would aid the court in determining which entity was involved.  (See Lubrano Aff.)  Plaintiff does not specify who within the Establishment had authorized the transmission, making it difficult to ascertain which business – defendant Ana's Unisex Beauty Supply or Tony's Barbershop – was actually associated with the display of the Event.

11

Accordingly, the Court respectfully recommends that the individual defendants not be held liable.[7]

C.    Damages

Unlike allegations pertaining to liability, allegations in connection with damages are not deemed admitted in the context of a default judgment. The burden is on the plaintiff to establish its entitlement to recovery "in an evidentiary proceeding in which the defendant has the opportunity to contest the amount." See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d at 158. While "the court must ensure that there is a basis for the damages specified in the default judgment, it may, but need not, make the determination through a hearing." Fustok v. Conticommodity Servs., Inc., 122 F.R.D. 151, 156 (S.D.N.Y. 1988), aff'd, 873 F.2d 38 (2d Cir. 1989).

Here, plaintiff has filed reasonably detailed affidavits and exhibits pertaining to the damages incurred. Additionally, the Court held an inquest hearing on June 13, 2019.

1.    Statutory Damages

Where, as here, a violation of Section 605 has occurred, plaintiff is entitled to elect statutory or actual damages. 47 U.S.C. § 605(e)(3)(C)(i). In this instance, plaintiff has asked

---

[7] Some courts in this district have found that similar allegations were sufficient to hold an individual defendant vicariously liable. See, e.g., Joe Hand Promotions, Inc. v. Blais, No. 11 CV 1214, 2013 WL 5447391, at *3 (E.D.N.Y. Sept. 30, 2013) (finding individual defendant vicariously liable); J & J Sports Productions, Inc. v. Benson, No. 06 CV 1119, 2007 WL 951872, at *7 (same); Garden City Boxing Club, Inc. v. Morales, No. 05 CV 0064, 2005 WL 2476264, at *10 (same). However, because the plaintiff has not even demonstrated which entity had sufficient control or a financial interest in the violation, the Court declines to recommend that the individual defendants be held vicariously liable.

the court to "grant up to the maximum allowance for statutory damages" pursuant to 47

U.S.C. § 605(e)(3)(C)(i)(II) and 47 U.S.C. § 553(c)(3)(ii).[8] (See Gagliardi Aff. ¶ 14).

Plaintiff also seeks an award of specific damages of $6,000 and $18,000. (Pl.'s Mem. at 5).

Section 605 provides for penalties "for each violation of subsection (a) of this section .

. . in a sum of not less than $1,000 or more than $10,000, as the court considers just . . . . " 47

U.S.C. § 605(e)(3)(C)(i)(II) (emphasis added). Although Section 605 requires the court to

assess damages based on each "violation" of the statute, there is no statutory definition of

"violation." See Garden City Boxing Club, Inc. v. Rosado, No. 05 CV 1037, 2005 WL

3018704, at *3 (E.D.N.Y. Oct. 6, 2005). Moreover, in cases such as this, involving the theft

of services by a commercial establishment, it is often difficult to assess a precise figure.

However, most cases applying this statute in a commercial context have interpreted the

showing of a single event on a single night as one violation. See, e.g., id.; Time Warner

Cable of New York City v. Taco Rapido Rest., 988 F. Supp. at 111.

In determining the amount of damages that may be imposed for each violation within

the range of $1,000 to $10,000 per violation, Section 605 leaves the decision within the sound

discretion of the court. See 47 U.S.C. § 605(e)(3)(C)(i)(II); see also Home Box Office v.

Champs of New Haven, Inc., 837 F. Supp. 480, 484 (D. Conn. 1993) (reducing an award from

---

[8] A plaintiff may only recover damages under one statute when there is a single illegal transmission. See International Cablevision, Inc. v. Sykes, 997 F.2d at 1009. Therefore, in accordance with Second Circuit precedent, the Court recommends that plaintiff receive an award of damages pursuant to Section 605. Id.; see also Garden City Boxing Club, Inc. v. Polanco, 2006 WL 305458, at *5.

$250,000 to $10,000 for commercial broadcast of a boxing match); Time Warner Cable v. Taco Rapido Rest., 988 F. Supp. at 111 (citing cases).  The factors to be considered in determining the appropriate amount of damages include the "'pecuniary loss sustained by the victim as a result of the offense, the financial resources of the defendant, . . . the financial needs and earning ability of the defendant . . . as well as the burden that a damage award would impose on the defendant relative to the burden alternative relief would impose.'" Cablevision Sys. Corp. v. De Palma, No. 87 CV 3528, 1989 WL 8165, at *6 (E.D.N.Y. Jan. 17, 1989) (quoting Cablevision Sys. Dev. Co. v. Cohen, No. 84 CV 1155, slip. op. at 4-5 (E.D.N.Y. May 20, 1988) (interpreting 47 U.S.C. § 553)); see also Entertainment by J & J, Inc. v. Ramsarran, No. 01 CV 5223, 2002 WL 720480, at *2 (E.D.N.Y. Mar. 11, 2002).

In calculating lost profits, some courts have awarded a flat damage amount when considering the unauthorized receipt and broadcast of a cable program by a commercial establishment.  See, e.g., Kingvision Pay-Per-View Ltd. v. Rodriguez, No. 02 CV 7972, 2003 WL 548891, at *2 (S.D.N.Y. Feb. 25, 2003) (awarding statutory minimum where plaintiff failed to establish any actual damages because plaintiff did not submit evidence of the cost of the license fee for defendants to broadcast the boxing event legally); Cablevision Sys. Corp. v. Maxie's North Shore Deli Corp., No. 88 CV 2834, 1991 WL 58350, at *2 (E.D.N.Y. Mar. 20, 1991) (awarding flat damage amount "based on the Court's view of the equities and not the estimate of the number of patrons"); Home Box Office v. Champs of New Haven, Inc., 837 F. Supp. at 484 (awarding statutory damages of $10,000 where it found the statutory maximum of $250,000 to be excessive).

Other courts have assessed damages based on the number of patrons in the commercial establishment during the broadcast.  See, e.g., Garden City Boxing Club v. Rosado, 2005 WL 3018704, at *3-4 (multiplying the number of patrons present at the unauthorized broadcast by the residential charge for the pay-per-view event being shown, $54.95); Top Rank Inc. v. Tacos Mexicanos, No. 01 CV 5977, 2003 WL 21143072, at *4-5 (E.D.N.Y. Mar. 28, 2003) (awarding $50 per patron); Entertainment by J & J, Inc. v. Mama Zee Rest. & Catering Servs., Inc., 2002 WL 2022522, at *3 (same); Time Warner Cable of New York City v. Googies Luncheonette, Inc. ("Googies"), 77 F. Supp. 2d 485, 489-90 (S.D.N.Y. 1999) (same); Time Warner Cable of New York City v. Taco Rapido Rest., 988 F. Supp. at 111 (same); Cablevision Sys. Corp. v. 45 Midland Enters., Inc., 858 F. Supp. 42, 45 (S.D.N.Y. 1994) (same).

In this case, plaintiff contends that it has suffered a loss of $2,000.00, which is the amount that plaintiff would have received had defendants entered into a contract with plaintiff to broadcast the Event.  (Pl.'s Mem. at 8; Gagliardi Aff., Ex. 2).  Plaintiff asserts more specifically that piracy causes a reduction in its lawful business because of the "perceived lack of consequence" for such behavior.  (Gagliardi Aff. ¶ 13).  Further, plaintiff argues there is a "reasonable presumption" that defendants obtained additional profits as a result of the illegal showing of the Event.  (Pl.'s Mem. at 8).  This section clearly applies to persons or entities that operate commercial establishments such as bars, taverns, and restaurants that exhibit the unauthorized programming to their patrons in order to encourage more customers to enter their establishments and buy food and/or drinks.  See Time Warner Cable of New York City v. Taco Rapido Rest., 988 F. Supp. at 111-12.  However, unlike cases involving

15

bars or restaurants, the establishment in question here is a barbershop, which would not generally sell food or liquor. Thus, it is questionable whether this "reasonable presumption" would apply to this defendant.

Plaintiff also seeks enhanced statutory damages pursuant to Sections 605(e)(3)(C)(i)(II) and 605(e)(3)(C)(ii), providing for additional awards of up to a maximum of $100,000.00 for all willful violations.  (Pl.'s Mem. at 6, 9-10).  The statute permits enhanced damages where the violation was committed willfully and for purposes of private financial gain.  See, e.g., Entertainment by J & J, Inc. v. Ramsarran, 2002 WL 720480, at *2 (awarding statutory damages of $5,000, increased by $10,000 for willfulness under 47 U.S.C. § 605(e)(3)(C)(ii), where defendant displayed a boxing match to eighteen patrons in his bar); Time Warner Cable of New York City v. Taco Rapido Rest., 988 F. Supp. at 111-12 (awarding statutory damages of $3,750, increased by $5,000 for willfulness under section 605(e)(3)(C)(ii), where defendant displayed a boxing match to seventy-five people inside and twenty people outside his restaurant).

In determining the enhanced damages for willful conduct, courts take varying approaches.  Some courts have awarded treble damages for willful violations.  See, e.g., J & J Sports Prods., Inc. v. Hot Shots, Inc., No. 09 CV 1884, 2010 WL 3522809, at *3 (E.D.N.Y. Apr. 27, 2010) (awarding plaintiff an enhancement of three times the statutory damages award of $2,747.50, or $8,242.50, for willfulness, for a total award of $10,990); J & J Sports Prods., Inc. v. Benson, No. 06 CV 1119, 2007 WL 951872, at *5 (E.D.N.Y. Mar. 27, 2007) (awarding statutory damages of $1,200, plus enhanced damages of $3,600, for a total of $4,800 where plaintiff did not advertise the event, charged no cover, and five patrons were

present); J & J Sports Prods., Inc. v. Forbes, No. 07 CV 4394, 2008 WL 5263732, at *1 (E.D.N.Y. Dec. 17, 2008) (awarding $1,000 in statutory damages and $3,000 in enhanced statutory damages for willfulness, for a total of $4,000); J & J Sports Prods., Inc. v. Drake, No. 06 CV 246, 2006 WL 2927163, at *5 (E.D.N.Y. Oct. 11, 2006) (same).

Other courts have doubled the statutory damage award to arrive at enhanced damages. See, e.g., J & J Sports Prods., Inc. v. Onyx Dreams, Inc., No. 12 CV 5355, 2013 WL 6192546, at *6-7 (E.D.N.Y. Nov. 26, 2013) (awarding enhanced damages of $9,011.80, or two times the statutory damages of $4,505.90, for a total of $13,517.70, where plaintiff was not paid a licensing fee and defendant charged a cover fee of $20); Joe Hand Promotions, Inc. v. Elmore, No. 11 CV 3761, 2013 WL 2352855, at *8 (E.D.N.Y. May 29, 2013) (awarding $1,538.60 in statutory damages plus two times that, $3,077.20 in enhanced damages, for a total award of $4,615.80); Garden City Boxing Club, Inc. v. 135 Hunt Station Billiard, Inc., No. 07 CV 3849, 2012 WL 4328355, at *5 (E.D.N.Y. June 21, 2012) (awarding $4,396.00 in enhanced damages, plus statutory damages of $2,198.00, where violations were willful but there was no evidence of past or future violations), report and recommendation adopted, 2012 WL 4328347 (E.D.N.Y. Sept. 19, 2012); J & J Sports Prods., Inc. v. Tellez, No. 11 CV 2823, 2011 WL 6371521, at *6 (E.D.N.Y. Dec. 20, 2011) (awarding $4,670.75 in statutory damages plus two times that, $9,341.50, in enhanced damages where plaintiff showed no evidence of prior violations and where revenues defendant earned were unclear).

Still other courts have awarded enhanced damages in an amount equal to that awarded for statutory damages. See, e.g., J & J Sports Prods., Inc. v. LDG Williams, LLC, No. 11 CV 2145, 2011 WL 5402031, at *1 (E.D.N.Y. Nov. 7, 2011) (awarding statutory damages of

$2,534.15 and enhanced damages of $2,534.15 for willfulness); <u>Entertainment by J & J, Inc. v. Friends II, Inc.</u>, No. 02 CV 585, 2003 WL 1990414, at *4 (S.D.N.Y. Apr. 25, 2003) (awarding statutory damages of $2,500 and enhanced damages of $2,500); <u>Entertainment by J & J Inc. v. Nina's Rest. & Catering</u>, No. 01 CV 5483, 2002 WL 1000286, at *3 (S.D.N.Y. May 9, 2002) (same).

Finally, sometimes courts decline to award enhanced damages.  <u>See, e.g.</u>, <u>J & J Sports Prods., Inc. v. Martinez</u>, No. 07 CV 3455, 2009 WL 1913239, at *2 (E.D.N.Y. June 30, 2009) (awarding $3,000 in statutory damages and zero enhanced damages for an establishment with 40 patrons where plaintiff failed to show "repeated violations over an extended period of time; substantial unlawful monetary gains; significant actual damages to plaintiff; defendant's advertising for the intended broadcast of the event; [or] defendant's charging a cover charge or charging premiums for food and drinks" (internal quotation marks and citation omitted)); <u>J & J Sports Prods., Inc. v. Louisias</u>, No. 06 CV 339, 2006 WL 1662608, at *5-6 (E.D.N.Y. May 16, 2006) (awarding $2,500 statutory damages and zero enhanced damages for a barbershop in which five patrons were present because there was no evidence that defendants exhibited the Event for commercial advantage); <u>J & J Sports Prods., Inc. v. Monte Limar Sports Bar</u>, No. 15 CV 3771, 2017 WL 933079, at *5 (E.D.N.Y March 8, 2017) (awarding $2,200 in statutory damages and zero in enhanced damaged because, although there were 100 patrons present, the court found no evidence of significant profit or commercial advantage); <u>J & J Sports Productions, Inc. v. LX Food Grocery, Inc.</u>, 15 CV 6505, 2016 WL 6905946, at *5 (E.D.N.Y Nov. 23, 2016) (awarding $2,200 in statutory damages and zero in enhanced

18

damages in which the auditor observed five patrons in the Establishment and the court found no evidence of commercial benefit).

    2. <u>Application</u>

    Where there is uncontradicted evidence of the number of patrons viewing an unauthorized program in an establishment, courts have calculated the award of damages by multiplying the individual residential rate to receive the transmission by the number of patrons present, and adding to this any other cover charges and profits that can be attributed to the unauthorized viewing. <u>J & J Sports Prods., Inc. v. LDG Williams, LLC</u>, 2011 WL 5402031, at *3; <u>see also</u> <u>J & J Sports Prods., Inc. v. Arhin</u>, No. 07 CV 2875, 2009 WL 1044500, at *1 (E.D.N.Y. Apr. 17, 2009). However, that amount fails to approach the actual lost revenues to plaintiff.  Plaintiff has stated that lost revenues in this case equal $2,000.00, based on the fee that would normally be charged to a commercial establishment with a capacity of 1-100 persons.  (Pl.'s Mem. at 8).

    Awarding the plaintiff $2,000.00 in lost revenues constitutes an award greater than the statutory minimum of $1,000.  <u>See</u> 47 U.S.C. § 605(e)(3)(C)(ii); <u>Kingvision Pay-Per-View Ltd. v. Autar</u>, 426 F. Supp. 2d 59, 63-64 (E.D.N.Y. 2006) (awarding $1,000 where multiplying the number of patrons by $50 would lead to a total less than the statutory minimum); <u>see also</u> <u>J & J Sports Prods., Inc. v. LGD Williams, LLC</u>, 2011 WL 5402031, at *4 (explaining that "courts use per-patron calculations as a 'starting point' for calculating damages . . . rather than as an exhaustive analysis where the sum of per-patron damages is less than the fee that an establishment would have paid for a sublicense to broadcast the

event") (citations omitted).  Here, where there has been no evidence of repeat violations, and no evidence that the defendants exhibited the match for commercial gain, the Court finds that an award of $2,000.00 constitutes "sufficient deterrence," and thus, the Court respectfully recommends that plaintiff be awarded $2,000.00 in statutory damages.  Other courts in this district have calculated damages by multiplying the residential rate by the number of patrons present, and then adding that amount to the licensing fee.  See, e.g., J & J Sports Prods., Inc. v. The Afrikan Poetry Theatre, Inc. No. 17 CV 2196, 2018 WL 1725692 (E.D.N.Y. Apr. 10, 2018).  However, the plaintiff did not provide the court with the residential rate in this case.

In determining whether an enhanced award for willful conduct is warranted, some precedents suggest that the simple fact the Event was intercepted and broadcast without permission is an indication of willfulness.  See, e.g., J & J Sports Prods., Inc. v. Big Daddy's Theme Palace No. 14 CV 2765, 2015 WL 58606, at *4 (E.D.N.Y. Jan. 5, 2015); J & J Sports Prods., Inc. v. Nest Restaurant & Bar, Inc. No. 17 CV 2194, 2018 WL 4921657, at *8 (E.D.N.Y. July 17, 2018).  Willful behavior under the statute has been interpreted to include "'disregard for the governing statute and an indifference for its requirements.'"  ON/TV of Chicago v. Julien, 763 F.2d 839, 844 (7th Cir. 1985) (quoting TransWorld Airlines, Inc. v. Thurston, 469 U.S. 111, 127 (1985)).  Plaintiff alleges that defendants intercepted and broadcast the Event without entering into a licensing agreement with plaintiff or paying fees to plaintiff.  Plaintiff alleges that in order to accomplish this, defendants could have utilized an unauthorized decoder, illegally transferred an authorized decoder to the location, illegally altered cable service to bring the signal to the defendant's establishment, or misrepresented the commercial establishment as a residential property to allow purchase of the Event at the

residential price.  (See Gagliardi Aff. ¶ 10).  However, in this instance, defendants streamed the Event using the internet. (Lubrano Aff. at 3).  The defendants then broadcast the Event to their patrons.

The burden for providing evidence of conditions for an award of enhanced damages is on the plaintiff.  "The plaintiff is entitled to an enhancement, however, if it establishes that the underlying violation was willful and undertaken for commercial advantage or private financial gain."  J & J Sports Prods., Inc. v. 291 Bar & Lounge, LLC, 648 F. Supp. 2d 469, 475 (E.D.N.Y. 2009).  See also Big Daddy's Theme Palace, 2015 WL 58606, at *3 (explaining that "the burden is on the plaintiff[s] to establish, by a reasonable certainty, their entitlement to the relief requested"); and Greyhound Exhibitgroup, Inc. v. E.L.U.L Realty Corp, 973 F.2d 155, 1992 WL 202660 at *158 (S.D.N.Y. Aug. 24, 1992) (holding that "[d]amages, which are neither susceptible of mathematical computation nor liquidated as of the default, usually must be established by the plaintiff . . .").

To determine whether enhanced damages should be awarded for willful conduct, courts often examine "whether there is evidence of (i) repeated violations; (ii) significant actual damages suffered by the plaintiff; (iii) substantial unlawful monetary gains by defendant; (iv) defendant's advertising of the event; and (v) defendant's collection of a cover charge or premiums for food and drinks."  J & J Sports Prods., Inc. v. Big Daddy's Theme Palace, 2015 WL 58606, at *5 (quoting J & J Sports Prods., Inc. v. Chulitas Enterprise Corp, No. 12 CV 3177, 2014 WL 917262, at *5 (E.D.N.Y. March 10, 2014)); J & J Sports Prods., Inc v. Brown, No. 18 CV 2489, 2019 WL 612225, at *5 (E.D.N.Y. Jan. 10, 2019) (applying

21

same factors).  Plaintiff has offered no evidence that any of these conditions have been met.

Plaintiff's affidavit does not indicate any food or drink was being served.  (See Lubrano Aff.).

While the courts in this district have often awarded enhanced damages even if none of the above conditions are met, see, e.g., J & J Sports Prods., Inc. v. His & Hers Bar & Lounge, No. 17 CV 4181, 2018 WL 4922912 (E.D.N.Y. Oct. 9, 2018), there are notable exceptions. In a few of these cases, the court has held that it "need not address willfulness, because [p]laintiff is not entitled to enhanced damages regardless."  See, e.g., J & J Sports Prods., Inc. v. Monte Limar Sports Bar, 2017 WL 933079, at *5; J & J Sports Prods., Inc. v. Right Brain Rest., Inc., No. 17 CV 1191, 2017 WL 4535928, at *5 (E.D.N.Y. Oct. 10, 2017).  Courts have neglected to award enhanced damages because there was "insufficient evidence" that the required conditions had been met.  J & J Sports Prods., Inc. v. Monte Limar Sports Bar, 2017 WL 933079, at *5; J & J Sports Prods., Inc. v. Right Brain Rest., Inc. 2017 WL 4535928, at *5. Further, the Court finds that when there is no evidence of significant profit made, plaintiff's only actual damages "are the lost licensing fee, which was already contemplated in the calculation of statutory damages above." J & J Sports Prods., Inc. v. Right Brain Rest., Inc. 2017 WL 4535928, at *5 (quoting J & J Sports Prods., Inc. v. GPN Bar Inc., No. 15 CV 6504, 2016 WL 8139019, at *6 (E.D.N.Y. Dec. 15, 2016)).  Here, this is a small barbershop and there were only two people watching the match when the inspector made his observation. There was no evidence that a cover charge was imposed or even that food and drink were being offered.  As there is no evidence provided by the plaintiff that the necessary conditions

for enhanced damages have been met, the Court finds that enhanced damages are not appropriate in this case.

The Court therefore respectfully recommends no additional award for the willfulness of this violation.[9]

Accordingly, the Court finds that the recommended statutory damages of $2,000.00 are sufficient to compensate plaintiff and to deter future illegal conduct on the part of defendants.  Mindful that only two patrons were present at the time the investigator viewed the Event, this Court concludes that the $2,000.00 figure is sufficient to deter future violations.  This Court therefore respectfully recommends that plaintiff be awarded $2,000.00.  This amount is in line with previous awards made by courts in the Eastern and Southern Districts of New York.  See, e.g., J & J Sports Prods., Inc. v. Louisias, No. 06 CV 339, 2006 WL 1662608, at *5-6 (E.D.N.Y. May 16, 2006) (awarding $2,500 in statutory damages and zero in enhanced damages for a barbershop in which five patrons were present because there was no evidence that defendants exhibited the Event for commercial advantage); J & J Sports Prods., Inc. v. LX Food Grocery, Inc., 2016 WL 6905946, at *5 (E.D.N.Y November 23, 2016) (awarding $2,200 in statutory damages and zero in enhanced

---

[9] One court in this district has noted that it is conceivable that a small business owner could accidentally sign up for residential cable service, or that an error on the part of a cable service provider could lead to a business being improperly categorized as a residence, thereby bringing into question whether or not a defendant willfully committed the violation.  See J & J Sports Prods., Inc. v. Louisias, No. 06 CV 339, 2006 WL 1662608, at *4 (E.D.N.Y. May 16, 2006).  However, given that in this case defendant has defaulted, this Court declines to speculate as to potential excuses for what appears to be a willful interception of the Event.

damages where the auditor observed five patrons in the Establishment and the court found no evidence of commercial benefit).

3. <u>Pre-judgment Interest</u>

Section 605 does not provide a statutory basis for an award of pre-judgment interest in this matter.  See <u>Entertainment by J&J Inc. v. Miraldo Rest., Inc.</u>, No. 01 CV 10832, 2003 U.S. Dist. LEXIS 11361, at *16 (S.D.N.Y. Apr. 23, 2003), <u>report and recommendation adopted</u>, 2003 U.S. Dist. LEXIS 9624, at *4-5 (S.D.N.Y. June 10, 2003); <u>see also</u> <u>DIRECTV, Inc. v. Montes</u>, 338 F. Supp. 2d 352, 356 (D. Conn. 2004); <u>DIRECTV, Inc. v. Getchel</u>, No. 3:03 CV 2073, 2004 WL 1202717, at *4 (D. Conn. May 26, 2004).  The district court may nevertheless choose to award pre-judgment interest.  See <u>Endico Potatoes, Inc. v. CIT Grp./Factoring, Inc.</u>, 67 F.3d 1063, 1071 (2d Cir. 1995) (holding that "[t]he decision whether to grant prejudgment interest and the rate used if such interest is granted 'are matters confided to the district court's broad discretion'") (citation omitted).  "The Second Circuit has recognized that pre-judgment interest may be permitted in the absence of express statutory authorization 'when the awards were fair, equitable and necessary to compensate the wronged party fully.'"  <u>Garden City Boxing Club, Inc. v. Rojas</u>, No. 05 CV 1047, 2006 WL 3388654, at *9 (E.D.N.Y. Nov. 21, 2006) (quoting <u>Wickham Contracting Co., Inc. v. Local Union No. 3</u>, 955 F.2d 831, 836 (2d Cir. 1992)).

However, pre-judgment interest is generally awarded only in "exceptional cases."  <u>Am. Honda Motor Co., Inc. v. Two Wheel Corp.</u>, 918 F.2d 1060, 1064 (2d Cir. 1990)

(internal quotation marks and citation omitted).  Plaintiff has not provided any reason for awarding pre-judgment interest under the circumstances, and since the Court finds that plaintiff has been sufficiently compensated, the Court respectfully recommends that pre-judgment interest not be awarded.

D.      Plaintiff's Attorneys' Fees and Costs

Pursuant to Section 605(e)(3)(B)(iii), plaintiff is also entitled to costs and reasonable attorneys' fees.  See 47 U.S.C. § 605(e)(3)(B)(iii) (stating that the court "shall direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails"); see also Int'l Cablevision v. Sykes, 997 F.2d at 1009.  Plaintiff requests that it "be granted 30 days from the date the judgment becomes final to submit its Motion for costs and attorneys' fees."  (Pl.'s Mem. at 10).  Plaintiff's request is granted.

CONCLUSION

Accordingly, this Court respectfully recommends that plaintiff be awarded $2,000.00 in statutory damages from defendant Ana's Unisex Beauty Supply, Inc.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within fourteen (14) days of receipt of this Report.  Failure to file objections within the specified time waives the right to appeal the District Court's order.  See 28 U.S.C. Section 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; Caidor v. Onandaga Cty., 517 F.3d 601, 604 (2d Cir. 2008).

25

The Clerk is directed to send copies of this Order to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED**.

Dated: Brooklyn, New York
      July 11, 2019

                                    /s/ Cheryl L. Pollak
                                    Cheryl L. Pollak
                                    United States Magistrate Judge
                                    Eastern District of New York